UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
Lexington Division

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case No.   07-51786 |
| CLASSICSTAR, LLC | : | Judge Joseph M. Scott |
| | : | |
| **Debtor** | : | |
| _____ | : | |
| | : | |
| JAMES D. LYON, Chapter 7 Trustee of ClassicStar, LLC, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Adversary No. 09-05125 |
| v. | : | |
| | : | |
| BAKER & HOSTETLER LLP, | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**MEMORANDUM OPINION ON REMAND**

This dispute was originally before us on the Motion of Defendant Baker & Hostetler LLP for Summary Judgment Against Plaintiff James D. Lyon ("Motion for Summary Judgment") (Doc. 12), on the Brief in Opposition to the Motion for Summary Judgment (Doc. 25) filed by James D. Lyon, the Chapter 7 Trustee of Debtor, ClassicStar, LLC ("Trustee"), and on the Response (Doc. 30) filed by Baker & Hostetler LLP ("B&H").  At the conclusion of a hearing held on March 5, 2010, we took the matter under submission and on March 9, 2010, entered a Memorandum Opinion (Doc. 32) granting B&H's Motion for Summary Judgment.  A separate order (Doc. 33) was entered dismissing the adversary proceeding.

On March 22, 2010, the Trustee appealed our decision to the United States Bankruptcy Appellate Panel for the Sixth Circuit (Doc. 35).  On March 29, 2010, B&H filed a timely election (Doc. 39) to have the appeal heard by the United States District Court for the Eastern District of Kentucky ("District Court").  On February 22, 2011, the District Court issued its Memorandum Opinion and Order (Doc. 48) which reversed and remanded the case to us for further

proceedings. Specifically, the District Court remanded for us to determine (i) whether genuine issues of material fact exist; (ii) whether the Debtor received any value from B&H; and (iii) whether that value was a reasonably equivalent exchange for B&H's fees.

After examining the District Court's Memorandum Opinion and Order, the Motion for Summary Judgment, the remaining pleadings, and the transcript of the March 5, 2010, hearing, we conclude, for the reasons set forth in this Memorandum Opinion on Remand, that the Motion for Summary Judgment will be **SUSTAINED** in favor of B&H.

### Standard for Motion for Summary Judgment

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56 applies in adversary proceedings.

> [O]n several occasions, the Court of Appeals for the Sixth Circuit has described the standard to grant a motion for summary judgment as follows:
>
> > A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case."

*Buckeye Retirement Co., LLC, Ltd., v. Swegan (In re Swegan)*, 383 B.R. 646, 652-53 (B.A.P. 6th Cir. 2008) (quoting *Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir.1998)).

### Background

On September 14, 2007 (the "Petition Date"), the Debtor, ClassicStar, LLC, filed its chapter 11 voluntary petition under Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. ("Bankruptcy Code"). On April 14, 2008, the case was converted to one under chapter 7, and James D. Lyon was appointed the chapter 7 trustee on that same date.

This adversary proceeding was filed September 9, 2009, against B&H under Bankruptcy Code §§ 548 and 550. The complaint alleges that in the two years preceding the Petition Date,

2

the Debtor made fraudulent transfers or incurred obligations to B&H in the amount of $847,889.92.

The relevant background facts pertaining to the Motion for Summary Judgment are stated in the District Court's Memorandum Opinion and Order. Those facts are reiterated here:

> ClassicStar operated a mare lease program, in which investors paid ClassicStar for breeding rights in thoroughbred mares for one breeding season. Investors purchased mare leases to take advantage of tax benefits that were purportedly available as a result of their investments.
>
> ClassicStar's original owner was S. David Plummer. GeoStar Corporation acquired ClassicStar around 2000. After the acquisition, S. David Plummer became a shareholder of GeoStar and served as GeoStar's director of marketing. S. David Plummer's son, Spencer Plummer, served as vice president and, later, president of GeoStar. S. David Plummer's brother-in-law, Gary Thomson, owned National Equine Lending Company, which loaned money to investors to allow them to purchase ClassicStar mare leases. Terry Green and his firm, Karren Hendrix Stagg Allen & Co., P.C., served as ClassicStar's auditor and provided accounting services to National Equine Lending Company.
>
> On November 10, 2004, the Internal Revenue Service sent a letter to S. David Plummer and informed him that the agency was considering an action against him for promoting abusive tax shelters. On or about January 25, 2005, Baker & Hostetler filed with the IRS a power of attorney indicating that the firm was representing S. David Plummer in the investigation. In subsequent correspondence between Baker & Hostetler and the IRS, the firm stated that it represented S. David Plummer. There is no evidence, however, that Baker & Hostetler executed an engagement letter with S. David Plummer. An engagement letter dated January 27, 2005, identified ClassicStar, not S. David Plummer, as the firm's client.
>
> The IRS expanded its investigation in November 2005. The agency sent additional promoter investigation letters, this time to Spencer Plummer, Terry Green, and Gary Thomson. Baker & Hostetler drafted a second engagement letter dated February 9, 2006. The second engagement letter identified ClassicStar, S. David Plummer, Spencer Plummer, Green, and Thomson as the firm's clients. ClassicStar paid Baker & Hostetler $847,889.92 in fees from October 2005 through December 2006.
>
> ClassicStar filed for bankruptcy on or about September [14], 2007. The trustee filed an adversarial proceeding on September 9, 2009, seeking to recover the fees from Baker & Hostetler under the bankruptcy code's "fraudulent transfer" provision. The trustee essentially claimed that the Plummers, Green, and Thomson ran their personal legal expenses through ClassicStar.
>
> Baker & Hostetler moved for summary judgment, arguing that the trustee could not prove that ClassicStar received less than a reasonably equivalent value in exchange for the firm's fees. Baker & Hostetler acknowledged that it

represented the Plummers, Green, and Thomson. But the firm argued that it also represented ClassicStar and that it prevented the IRS investigation from ruining ClassicStar's business.

*Lyon v. Baker & Hostetler LLP (In re ClassicStar, LLC)*, No. 10-120-JBC, slip op. at 1-3 (E.D. Ky. Feb. 22, 2011).

## Discussion

11 U.S.C. § 548 provides:

**(a)(1)** The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

   . . .

   **(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

      **(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

      **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

      **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

      **(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). "A trustee seeking to avoid a transfer carries the burden of proving each statutory element by a preponderance of the evidence." *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. App'x 337, 341 (6th Cir. 2006).

A.  <u>Whether any genuine issues of material fact exist</u>?

The mere allegation of the existence of a factual dispute is insufficient to defeat a summary judgment motion. There must exist in the record a genuine issue of material fact. *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 512 (6th Cir. 2000) (citing *Anderson v.*

4

*Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A material fact is one that has the 'potential to affect the outcome of the suit under applicable law.'" *FDIC v. Anchor Props.,* 13 F.3d 27, 30 (1st Cir. 1994) (citation omitted). "[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir. 1992) (quoting *Anderson,* 477 U.S. at 248, 106 S. Ct. 2505). "If the facts in a case are undisputed, one of the parties is entitled to judgment as a matter of law." *Niecko*, 973 F.2d at 1304.

As quoted above, the basic facts of this matter are clear. Pursuant to letters of representation, B&H was hired to provide tax advice to ClassicStar and several individuals who were being investigated by the IRS under the Internal Revenue Code § 6700 (the "IRS § 6700 Promoter Investigation"). The parties agree that ClassicStar paid the legal fees to B&H. What the parties argue about is whether B&H was in fact representing ClassicStar or the individuals. The Trustee argues that ClassicStar was not a target of the IRS § 6700 Promoter Investigation and did not need representation. B&H is adamant that although the summonses were issued to various individuals, ClassicStar was the target of the IRS § 6700 Promoter Investigation. The Affidavit of Jeffrey H. Paravono, the Managing Partner of the Washington, D.C. office of B&H, reflects that he has extensive knowledge in the area of IRS promoter investigations. (Mot. for Summ. J., Ex. 1 Aff. of Paravono).

In describing an investigation under IRC § 6700, Mr. Paravono states in his Affidavit:

> 13.     Section 6700 of the Internal Revenue Code (the "Code") deals with the promotion of "abusive tax shelters." An "abusive tax shelter" is the avoidance or evasion of federal income tax. Under 6103 of the Code, an IRS § 6700 Promoter Audit is generally a private matter. It usually may not be disclosed by the IRS to the public unless the IRS obtains injunctive relief to prevent abuse. If the IRS goes to court, the investigation becomes public—the name of the individual against whom the injunction is sought and the name of the underlying business are both revealed.

5

>    14.    A promoter injunction frequently leads to an entity's demise. The bad publicity that results from an injunction critically affects a business's viability. The IRS's real target in a promoter audit is the promoted business. Consequently, it is critical for a business connected to an IRS § 6700 Promoter Audit to ensure that the audited persons cooperate with the IRS immediately and fully so that the IRS does not seek injunctive relief or other remedies.
>
>    . . .
>
>    16.    The IRS . . . will generally not communicate with the underlying entity or its counsel. It will only communicate with counsel for the individuals promoting the business who are under the IRS § 6700 Promoter Audits. The IRS requires counsel to submit a form power of attorney for each person or entity under investigation.

(Aff. of Paravono at 4-5).[1] The Trustee offered no evidence rebutting Mr. Paravono's statements regarding the procedure and ramifications of an IRS § 6700 promoter investigation. We find, that the evidence in the record reflects that ClassicStar was in need of representation as a potential target of the IRS. This finding is supported not only by the Affidavit of Mr. Paravono, but also, most significantly, by reviewing the summons sent to S. David Plummer dated January 14, 2005. Attachment A to the summons provides:

>    For purposes of this summons:
>    (1) The term promoter applies to S. David Plummer *and any entity owned, controlled, or operated by him as an individual, officer, trustee, member, or partner,*
>    (2) The term promoter also applies to any person acting in concert with S. David Plummer in connection with the tax shelter plan or arrangement; and,
>    (3) The term tax shelter plan or arrangement means the *Mare Lease Program* and/or the Coal Bed Methane Oil and Gas Lease Program.

(Aff. of Paravono, Ex. D Summons (emphasis added)). The summons required the production of documents from January 1, 1998, to the present. S. David Plummer was the original owner and president of ClassicStar.[2] This fact brought ClassicStar within the definition of "promoter." Further, the reference in the summons to the Mare Lease Program as a "tax shelter plan" certainly

---

[1] "Section 6700 penalizes persons who are involved in the promotion or sale of fraudulent tax shelters or other 'abusive tax avoidance schemes.'" *Millennium Mktg. Group, LLC v. U.S.*, Civil No. H-06-962, 2010) WL 1768235, at *1 (S.D. Tex. Feb. 9, 2010) (citing *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985)).

[2] In the March 22, 2005, letter from Paravono to Riley, S. David Plummer's ownership interest in various entities that eventually became ClassicStar are traced from 1998 to March 2005. (Aff. of Paravono, Ex. E March 22, 2005, Letter from Paravono to Riley)

implicated ClassicStar in the investigation since that was the business in which ClassicStar was involved. The Trustee has produced no evidence to rebut the fact that ClassicStar fell within the term "promoter" as defined above. As such, it is reasonable to expect that both S. David Plummer and ClassicStar would need B&H's legal advice to respond to the summons.

Further, Mr. Paravono sent a letter dated March 22, 2005, to Jacob Riley, the IRS examiner, which goes into extensive detail regarding *ClassicStar's* business. This letter was in response to issues raised by Mr. Riley with Mr. Paravono at a meeting held on March 8, 2005. Mr. Riley's questions apparently related to ClassicStar's business, its ownership, its affiliate GeoStar Corporation ("GeoStar"), business activities between ClassicStar and GeoStar or investors in each entity, tax advice given to ClassicStar, seminars held by ClassicStar and promotional information distributed by *ClassicStar*. "In connection with the IRS § 6700 Promoter Audit, the IRS sought information about every facet of ClassicStar's business." (Aff. of Paravono, at 6). S. David Plummer is not mentioned in the letter except in the regarding line which would be expected since that is the matter to which Mr. Paravono was responding, much the same as referring to a case number. (Aff. of Paravono, Ex. E March 22, 2005, Letter from Paravono to Riley).

The Trustee provides several additional letters to Mr. Riley from Mr. Paravono referring to "S. David Plummer: Section 6700 Promoter Investigation" in the regarding line. The Trustee notes that none of these letters disclose to the IRS that B&H represented ClassicStar. The Trustee asserts that this is somehow evidence that B&H did not represent ClassicStar. Our review of these letters reflect that the body of each letter refers to or addresses substantial issues relating to ClassicStar, its business or affiliates.

The January 25, 2005, letter refers to documents already forwarded to Mr. Riley by S. David Plummer, including the Mare Lease and Breeding Agreement, Boarding Agreement and Foal Agreement, all likely related to ClassicStar's business.

7

The February 24, 2005, letter forwards copies of numerous documents to Mr. Riley, including a substantial number related to ClassicStar.

The June 7, 2005, letter explains in detail the relationship between ClassicStar and the National Equine Lending Company and states that "both *ClassicStar* and David Plummer desire to comply not only with the technical requirements of the Code, but also to make whatever modifications are necessary in order to conform to best practices." (Dec. of Jonathan Scott Goldman (Doc. 26), Ex. C, at 2 (emphasis added)). Mr. Paravono could not make representations on behalf of what ClassicStar was going to do or was willing to do if B&H was not representing ClassicStar.

The May 20, 2005, June 28, 2005, and August 24, 2005, letters all contain representations that ClassicStar and David Plummer respect the IRS's right to examine their business and records and that ClassicStar and David Plummer are willing to cooperate with the IRS and modify their business practices as the IRS reasonably believes necessary.  The June 28, 2005, letter goes on for twenty-one pages to provide information requested by the IRS regarding ClassicStar's association with GeoStar as well as what appears to be a tutorial on the tax issues related to the business of farming, raising horses and other animals, the growing process, etc. (Dec. of Goldman, Ex. D).  Likewise, the May 20, 2005 and August 24, 2005, letters substantially pertain to ClassicStar's business covering topics such as support for breeder cost figures, insurance coverage, amounts at risk under IRC § 465, ClassicStar Foal Agreement and the Horse Board and Services Agreement, lease rates for mare leases, how ClassicStar made money, and a demonstration of profits earned by breeders.

The Trustee's argument is without merit, is not material, and is without legal support.  In fact, the above letters attached to the declaration of the Trustee's own attorney offer substantial support that B&H was representing ClassicStar.

The Trustee argues that there are other material facts in dispute:

8

1. The Trustee argues that B&H's refusal to turn over to the Trustee B&H's files relating to ClassicStar is inconsistent with B&H's position that it represented ClassicStar. The Trustee argues that as Trustee, he steps into ClassicStar's shoes. Therefore if B&H represented ClassicStar, then those files belong to the Trustee. What the Trustee fails to acknowledge is that it is inconsistent for the Trustee to send B&H a demand letter to turnover of the files when the Trustee has sued B&H on the basis that B&H did not represent ClassicStar. This argument is also without merit.

2. The Trustee argues that under the terms of the second engagement letter with B&H, GeoStar became responsible for payment of B&H's fees. From this language, the Trustee jumps to the conclusion that ClassicStar was no longer obligated under the terms of the first engagement letter to pay B&H's fees. Nothing in the second engagement letter releases ClassicStar from its obligations to pay B&H's fees. The fact that GeoStar might also have some obligation to pay B&H's fees is immaterial and is not outcome determinative. The fact is ClassicStar had an obligation to and did pay B&H's fees.

The remainder of the Trustee's assertions that genuine issues of material fact exist are all without merit. "Factual disputes that are irrelevant or unnecessary will not be counted." *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir. 1992). We find that no genuine issues of material fact exist.

B. Whether the Debtor received *any* value in exchange for paying B&H's fees?

The only issue under § 548 that is before us on remand is whether the Debtor received reasonably equivalent value for the $847,889.92 transferred to B&H.

> This is a question of fact. A court considering this question should first determine whether the debtor received *any* value in exchange. If so, the court should determine if the value received was reasonably equivalent.

*In re Wilkinson*, 196 Fed. App'x at 341 (internal quotations and citation omitted) (emphasis in original). Based on the above discussion and this Court's finding that ClassicStar was in need of

9

legal services regarding the IRS § 6700 Promoter Investigation, we find that ClassicStar did receive value in the form of legal services and advice in exchange for paying B&H's fees.

  C. <u>Whether the Debtor received reasonably equivalent value?</u>

> Though the Bankruptcy Code does not define "reasonably equivalent value," it does define "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). A determination of whether value was given under Section 548 should focus on the *value of the goods and services provided rather than on the impact the goods and services had on the bankrupt enterprise.* This determination depends on the circumstances of each case and not on a fixed mathematical formula. Fair market value is one factor the bankruptcy court may consider.

*In re Wilkinson*, 196 Fed. App'x at 341-42 (some internal quotations and citation omitted) (emphasis added). "The date for determining reasonabl[y] equivalent value is the date of the transfer." *Id.* at 342. "[A] reduction in debt is sufficient to establish equivalent value." *Id.* at 343. "[Section] 548 is directed at what the debtor surrendered and what the debtor received *irrespective of what any third party may have gained or lost.*" *Id.* (internal quotations and citations omitted) (emphasis added).

  The Trustee asserts that ClassicStar did not receive reasonably equivalent value because the investigation became public information and ClassicStar filed bankruptcy. However, we do not use hindsight to determine whether reasonably equivalent value was given. At the time B&H was paid for its services, ClassicStar was in need of and was receiving reasonably equivalent value for the fees ClassicStar paid to B&H. The Trustee has not alleged that B&H's rates or fees were too high or that the time spent on any matter was unreasonable. From our own review of the statements of fees and services rendered by B&H, we determine that they are reasonable.

  Here there is no dispute that ClassicStar made payments of approximately $848,000.00 to B&H and the debt to B&H was then reduced in a dollar-for-dollar amount of $848,000.00.

  Finally, B&H agrees that individuals other than ClassicStar benefitted from B&H's advice that was paid for by ClassicStar. However, that fact does not reduce the benefit received by ClassicStar. Nor is there any proof that any of the individuals received a benefit based on advice given to that individual where ClassicStar did not receive an equivalent benefit.

We find that ClassicStar received reasonably equivalent value for the approximate $848,000.00 disbursements made to B&H.

### Conclusion

This Memorandum Opinion on Remand constitutes the Court's Findings of Facts and Conclusions of Law. A separate order dismissing the case shall be entered.

COPIES TO:
Earl M. Forte, Esq.
James T. Strawley, Esq.
John O. Morgan, Jr., Esq.
Eric R. Goodman, Esq.
Joseph F. Hutchinson, Jr., Esq.
Wendy J. Gibson, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Tuesday, June 07, 2011**
**(jms)**